EASTERN DIS.
April, 1841.

MILLAUDON
ET AL.
vs.
M'DONOUGH.

---

## MILLAUDON ET AL. vs. M'DONOUGH.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

In an action for slander of title, when the defendant reconvenes and sets up title, it becomes essentially a petitory action, and the burden of proof of title rests on the defendant.

The last warrantor is the real defendant in a suit against his vendees, not only against the party who cites him, but more particularly against the original actor.

Copies of Township Maps are not admissible in evidence when better evidence can be procured.

So copies from public documents must be certified by the proper officer, who is the keeper of the original. The surveyor general and not the register, has authority to certify township maps to make them legal evidence.

The court will look beyond the confirmation of a claim by the land commissioners or congress, emanating from the former governments of Louisiana, in order to ascertain the extent and boundaries of the land claimed.

When the expression in a grant or title only conveys a certain front and depth the grantee or purchaser cannot claim by diverging lines to the rear, and thereby obtain more than the superficies contained in a parallelogram.

EASTERN   DIS.
*April*, 1841.

MILLAUDON
ET AL.
*vs.*
M'DONOUGH.

This is an action of jactitation or slander of title, instituted by L. Millaudon, John Slidell, J. Kohn in his own right and as syndic of the creditors of H. G. Schmidt, and F. Frey, against John M'Donough. The plaintiffs allege that on the 17th May, 1836, they purchased, in conjunction with C., F. Zimpel and H. T. Williams, from A. F. Rightor, a tract of land, forming a part of what is generally termed the HOUMAS GRANT, situated in the rear of three plantations in the parish of Ascension, on the left bank of the Mississippi river, owned by Douredon Bringier, François Laville, and the heirs of Wade Hampton, beginning at the distance of 80 arpents from the river, and containing 90,413 superficial arpents; the lines of which tract run from the rear of the said plantations to the Lake Maurepas.

The plaintiffs further allege that John M'Donough of New Orleans, publicly asserts that he is the true owner and proprietor of said land, or of a large portion of it; that he has been amicably requested to desist from slandering their title; or if he has any himself, to institute suit and establish his title; but that he declines and refuses to do either; wherefore in consequence of his unjust and illegal conduct they have been deprived of many advantageous offers to effect profitable sales. They allege that they are the true and lawful owners of said tract of land; and that they and those under whom they claim have been in possession of the same ever since the 21st June, 1777; and that M'Donough has no title. They pray that he be cited and required to set forth his titles such as they are, and if he fails, that they be forever quieted in their title and possession, and have judgment for $50,000 damages. They annex to their petition the act of sale from Rightor to them.

M'Donough joined issue; pleaded a general denial, and set up title to the land in question. He reconvenes; alleges that the plaintiffs have no title, and prays that they be cited to an-

EASTERN DIS.
April, 1841.

MILLAUDON
ET AL.
vs.
M'DONOUGH.

swer his claim in reconvention, and be compeLed to adduce and exhibit their titles; and that he have judgment decreeing him to be the lawful owner, and quieting him in the possession of said land.

The plaintiffs responded to this reconventional demand, averring that M'Donough had no title to this land, but that they have as *bonu fide* purchasers from A. F. Rightor, whom they call in warranty and require to defend the original titles thereto.

Rightor appeared, and denied that he was responsible in warranty; that he had exhibited the original titles, with which his vendees, the plaintiffs, were well acquainted, and that they had a perfect knowledge of the pretended claim of M'Donough. He avers that he was the only true and lawful owner at the time he sold this land, and that M'Donough has no title whatever to the premises in contest; but is now bound to sue and establish his pretended claim or abandon it.

Upon these pleadings and issues the cause was tried before the court.

The first question raised is, on whom lies the burden of proof or who holds the affirmative? It was ruled to lie on M'Donough. Holding the affirmative, he produced as the foundation of his claim, a French grant to one Pierre Joseph Delille Duparc, dated April 3d, 1769, *giving natural boundaries;* having 30 arpents front on the Mississippi, with the depth between it and Lake Maurepas; embracing land where formerly existed two indian villages of the Collapissa Indians, situated about 16 leagues above the city, measuring from the plantation of Allemand to that of Joseph Lacomb, a mulatto man. This grant appears never to have been actually or definitively located.

The defendant, M'Donough offered a plan or plat of survey made by one F. V. Potier, purporting to be a plan extracted from minutes of his operations as surveyor, in 1806, 1808 and 1812, showing the lines as represented by him of the eastern shore of the Maryland Louisiana Company, which M'Do-

nough claims, and others marked out in three large divisions, covering the lands embraced by the villages of the Collapissa Indians, the grant to Delille Duparc, &c. This plan or location fronts on the Mississippi river and extends back 18 miles to the river Amite, opening like a fan by diverging lines; and upon this plan, the defendant relies as a location of his title. It is made out and signed by Potier, styling himself a sworn surveyor, in 1812. The location relied on does not touch Lake Maurepas as required by the French grant to Duparc, and does not purport to be made by authority of the government or any officer thereof.

From all the evidence adduced, the District Judge was of opinion that the defendant failed to make out title to the *locus in quo*. That the French grant under which he claimed, if valid and properly located by parallel lines would not touch or interfere with the lands claimed by the plaintiffs. There was judgment in their favor, quieting them in their possession against the pretensions set up by the defendant, and he appealed.

*Preston & Ilsley*, for plaintiffs, and Rightor, called in warranty

*Grymes & Strawbridge*, for defendant.

*Garland, J.* delivered the opinion of the court.

The Plaintiffs allege that they with Henry T. Williams and Charles F. Zimpel, purchased a large tract of land of A. F. Rightor, being a portion of a claim or grant generally known as the HOUMAS, in the parish of Ascension. They took possession, with the intention of dividing it into smaller tracts and selling them at auction, to affect a partition; but were prevented from doing so, by the acts and conduct of the defendant, who publicly declared that he was the owner of a large portion of the land, and slandered their title. They say they have requested him to desist his slanders or to bring suit to assert his

title, which he declines. They pray that he be compelled to set forth his title, if he has any, and if he fail to do so, that they be quieted in their possession against his claims and pretensions, that he be enjoined to desist therefrom; and further, that they have judgment for fifty thousand dollars damages for the tortious acts of said defendant.

The defendant pleads a general denial, then specially that the plaintiffs have no title; he further avers that he is the true and lawful owner of the land by good and sufficient titles, and concludes by a demand in reconvention, in which he prays the plaintiffs may be cited to answer; that they be compelled to produce and exhibit their titles; and that he be quieted and maintained in his possession of the land.

The plaintiffs, for answer to this reconventional demand, plead the general issue, and called on A. F. Rightor, as their warrantor, to maintain and defend their title against that of M'Donough. Rightor answers the call in warranty, by a plea of the general issue; secondly, that the plaintiffs are not entitled to the remedies against him, which thay claim; thirdly, that they had a perfect knowledge of the character and extent of the defendant's claim when they purchased, and therefore have no right to call on him as warrantor. He further says the plaintiffs have a good and sufficient title; that M'Donough has none at all; and if he has, he is bound to sue the plaintiffs to establish it or abandon his claim. He prays that M'Donough be compelled to exhibit his title, that it be rejected, and he concurs in the prayers of the plaintiffs against him, (M'Donough).

It is further prayed that the cause be tried by a jury; but subsequently the parties agreed to submit the question of titles to the court, reserving the damages to a trial before the jury.

The issues in this case are somewhat complicated, it has been argued at great length and with eminent ability. A variety of questions have been raised by bills of exceptions, which with the evidence, have swelled the record to a great size, and both plaintiffs and defendant evidently desire the court

to go much farther into an investigation of, and decision upon, their respective titles, than is necessary for the settlement of the controversy between them.   We think we can see difficulties enough, likely to arise out of both these claims, in which persons not now before us may be interested; we shall not anticipate the points that may hereafter be made, and will now only decide what is indispensable to the adjustment of the difficulty between the parties before us.

The first question is upon which party lies the burden of proof, as to the title of the land.   The defendant says it rests upon his adversaries and their warrantor.   We think differently; the reasons given by the District Judge in his judgment have not been refuted, and are, in our opinion unanswerable. He says the demand of the plaintiffs in their original petition does not constitute a petitory action.   It is destitute of the first requisite of that action; not being brought against a party alleged to be in possession; C. P., art. 43.   On the contrary the plaintiffs allege they are in possession and are disquieted and prevented from making a legitimate use and profit out of their possession and title by the words and acts of the defendant, for which cause they ask for damages; and that he be enjoined from setting up any claim for the future, unless he do it at once, either in the present action or by another suit.   It is true, the defendant says he is in possession also, and had he rested his case upon that allegation, it is possible the question would have been limited to that inquiry; according to article 49 of the Code of Practice.   But the defendant has gone further, without excepting to the form of the action; he comes up to the mark, sets up title in himself and institutes a reconventional demand, asking that the property be adjudged to him.   This reconventional or cross action, which is by the Code of Practice consolidated with the principal or original suit, is clearly petitory; and imposes on M'Donough the obligation of making the proof requisite to sustain his demand.   So fully does this seem to have been understood by the parties originally that all the subsequent proceedings are in accordance with the idea

In an action for slander of title, when the defendant reconvenes and sets up title, it becomes essentially a petitory action, and the burden of proof of title rests on the defendant.

Eastern Dis.
April, 1841.

MILLAUDON
ET AL.
vs.
M'DONOUGH.

The last war-
rantor is the
real defendant
in a suit against
his vendees, not
only against the
party who cites
him, but more
particularly a-
gainst the origi-
nal actor.

of the original defendant having become *pro hac vice* the plain_ tiff.  The plaintiffs cite their vendor, Rightor, in warranty to defend their title, according to C. Pr., articles 379 *et sequiter*. Every provision of that Code assumes that the warrantor is a defendant in the issue.  There are various decisions of this court, and we hold it to be well settled, that the last warrantor is the real defendant in a suit against his vendees, not only against the party who cites him, but more particularly against the original actor.  That person in the present suit, so far as Rightor is concerned, both in substance and form, is M'Donough, whose pretensions he is called upon by his vendees to resist. This question has been heretofore decided by this court in 9 Martin, 556, and 11 La. Rep., 188, and we see no reason for changing the precedents.

M'Donough, holding the affirmative of the issue, offered in evidence a certified copy, from the register or record of complete grants in the Land Office in New Orleans, by which it appeared that on the 3d of April, 1769, the French Governor of Louisiana granted to Pierre Joseph Delille Duparc, pére, a tract of land having thirty arpents front on the Mississippi river, with all the depth which might be found to Lake Maurepas, of the land where formerly stood two villages of the Collapissa Indians, situated about sixteen leagues above the city on the same side, to take from the plantation of a person named . . . . . . . Allemand, and join that of a free mulatto man named Joseph Lacomb.  The usual stipulations and reservations are made in this grant.  To its reception in evidence various objections were made, which were overruled and bills of exception taken by Rightor, and the grant attacked after it was received, as being a nullity on various grounds.  It is not necessary in the present case to decide any of these questions.

The counsel for Rightor on whom devolved the whole defence of this case (the plaintiffs not appearing at all, further than to join issue with M'Donough) insists that supposing the grant to Delille Duparc to be genuine, given by competent authority, and all the rights of the grantee vested in his oppo-

nent, (all of which he specially denies however) that then this
action cannot be maintained, because, he says, being for a cer-
tain front and depth and it not being specified that the lines are
to open or close in any manner, it must be located by parallel
lines, and the evidence shows conclusively that if so located, it
will not touch any portion of the land claimed by the plaintiffs.
But the counsel for M'Donough insist the lines should open
upwards of twenty degrees, and endeavor to prove that it has
been located and should so continue, as to let the lower line
touch the western shore of Lake Maurepas, and the upper
running westerly, strike the Amite river, at a distance of about
nineteen miles from the Mississippi and nearly that distance
from the point where the lower line touches the lake. Nothing
is said in the grant about the Amite river, nor is it shown that
the lines should open in this manner so as to include the sites
of the two Indian villages mentioned in it. If this location
were to be sanctioned the Duparc claim would cover some-
where about 100,000 arpents of land.

To sustain their position, the counsel for M'Donough insist
strenuously on what they call a plat made by Don Carlos Tru-
deau, in 1790, which they say indicates the partition of the
tract among the heirs and legal representatives of Delille Du-
parc, as on it, it is said, the lines open in the rear as
claimed. This document was objected to as evidence by
the counsel of Rightor, but received by the court with the
exception of a written memorandum on it, and a bill of
exception taken, which we consider it unnecessary to decide
on, as we think the paper does not prove what is al-
leged, nor is it entitled to any weight as evidence. It is
neither a survey or plat, or a copy properly authenticated,
showing how the partition was made. On the face it is appa-
rent a partition had been made previously and there is evidence
in the record showing it must have been made several years
previous, as one of the heirs sold her portion to Fonteneau in
1784. This plan is evidently nothing more than a sketch made
by Trudeau to represent the front of the tract, which it seems

EASTERN DIS.
April, 1841.

MILLAUDON
ET AL.
vs.
M'DONOUGH.

EASTERN DIS.
*April*, 1841.

MILLAUDON
ET AL.
*vs.*
M'DONOUGH.

had increased from thirty arpents front in 1769 to upwards of forty arpents in 1790. There is not about it that particularity and neatness which marks the operations of the former Surveyor General of the Province of Louisiana. The lines drawn seem to be experimental or provisional. None of those running out from the river have any length marked and out of fifteen lines drawn or dotted, but six have any bearing indicated, and that is different on each of them. The statement in writing on the face of the sketch indicates its true character. It is not in the form of a proces verbal, but is stated to be a note, which says that the land belonging to the succession having been asserted to have thirty-five arpents front, according to the declarations of the parties interested, and conformably to the writings and sales passed by the heirs in favor of Henri Fonteneau, Gelar Pedro Le Bourgeois, Alexander Laing, mulatto, and Don Francisco Duparc, the son, the only one who had not sold his portion; but from the verification that was had in the month of March, 1787, repeated this day, the 10th of August in the current year, the same was found to contain forty arpents and twenty-three toises front on the Mississippi, measured upon the lines marked (punteas) a. b. c. &c., &c. This is dated the 10th of August, 1790, and signed by Carlos Trudeau. In no part of this note or statement does he assume any official character. If this plan or sketch was of any validity at all, it would perhaps prove more for the defendant than he wishes, as it fixes his claim in the parish of St. John the Baptist, instead of the county of Acadia. In connection with this plan we find another in the record, which is authentic, that differs from it in various particulars. It appears that Henri Fonteneau in 1784 purchased of Madame Macnamarra, one of the heirs of Delille Duparc, her portion of the land, being one-fifth. In the act of sale, made in presence of the Commandant of the Post or Parish of St. John the Baptist, the land is described as a tract in that parish, having seven arpents front on the river, by the ordinary depth (profondeur ordinaire). Not a word is said about the lines extending to the lake, or their opening. On the 24th

EASTERN DIS.
*April,* 1841.

MILLAUDON
ET AL.
*vs.*
M'DONOUGH.

of September in the year 1790, Trudeau makes a survey of this land, places it in the parish aforesaid, gives it a front of eight arpents, four toises and three feet front, and states the lower side line to run north eight degrees and fifty minutes east, and the upper, north ten minutes west, according to the needle, without attending to the variation. (Norte ocho grados cinquento minutas este, de la actual agujasin attendes a la variacion.) This varies widely from other plans and surveys submitted to us, it in fact differs from any other plat that we see in the record, and it is the only authentic one of the lower portion of the Duparc claim made by authority of the Spanish government. We have no other evidence of any well-founded claim to an opening towards the rear, till M'Donough and Brown became interested in the land. They purchased upwards of eighteen arpents front by eighty in depth of Pierre Le Bourgeois the 3d of March, 1806, and in the act of sale there is nothing said of the lines extending beyond that depth or opening in any manner, but it is mentioned that two plats of surveys exist and were delivered by the vendor to the purchasers, paraphed by the notary, neither of which are produced.

When the inventory of Delille Duparc's estate was made in 1776, the land is represented as extending to Lake Maurepas, but not a word said of there being an opening towards the rear. Sometime after M'Donough and Brown purchased of Le Bourgeois, they presented the claim for confirmation to the Commissioners of the United States in the eastern district of Louisiana, and represent it as having a front of eighteen arpents, three toises and three feet, by eighty feet deep, and having an opening of twenty degrees and *seventy-one minutes* towards the rear, and with the exception of a small portion it was confirmed to that extent; American State Papers, vol. 2, Public Lands, 332. This claim was based upon a grant of the Spanish Government to Le Bourgeois, nothing being said about a grant to Duparc.

Another portion of this claim was derived from Duparc, through L. H. Guerlain, agent of the Eastern Shore of Mary-

EASTERN DIS.
April, 1841.

MILLAUDON
ET AL.
vs.
M'DONOUGH.

land Louisiana Company. We have carefully examined this branch of the title and find nothing to prove the claim had any opening until sometime after it was recognized by the United States. In the 2d vol. American State Papers, relating to public lands, p. 297, this claim was presented for confirmation and described as " situate on the east side of the Mississippi river, in the county of Acadia, containing ten arpents and seven toises in front, and in depth extending to Lake Maurepas, bounded on one side by M'Donough and Brown, and on the other by land of Antoine Tregle." Not a word is said about an opening. The claim is confirmed for a depth of forty arpents and rejected for the remainder. On pages 300 and 343 of the same volume it will be seen these claims were again under the consideration of the Commissioners and rejected. An examination of the title to the remaining portion of this claim, which comes through Tregle, establishes the fact that the idea of the Duparc grant opening towards the rear was of modern origin. It is certain that M'Donough did not consider it as extending to the Amite river previous to 1806, as he was himself established on that stream some years previous under a different title or as a trespasser.

We have been thus particular in the examination of all these circumstances to show that the effects of the subsequent action on the claim are not such as contended for by the defendant.

In the American State Papers, vol. 3, relating to the Public Lands, p. 254, and from the record, we ascertain that McDonough & Co. again applied to the Register of the Land Office and Receiver of public monies in New-Orleans to report on this claim, under the provisions of the act of Congress passed the 27th January, 1813, entitled "An Act giving further time for registering claims to land in the Eastern and Western Districts of the Territory of Orleans, now State of Louisiana." It is described as "a tract of land situated in the county of Acadia on the East shore of the Mississippi, sixteen leagues above New-Orleans, containing thirty-two arpents front, with a depth extending as far as Lake Maurepas. This tract has

formerly been claimed before the Board of Commissioners and the depth extending beyond forty acres, rejected by them for want of evidence of title; but the claimants have since produced a complete French title for the whole quantity claimed, in favor of Delille Duparc under whom they claim, dated the 3d of April, 1769." This claim is placed by the Register and Receiver in the first class, which they say comprehends such claims as stand confirmed by law. It will be observed that the grant to Delille Duparc is now spoken of for the first time; his claim whenever mentioned previously was described as one derived from the Collapissa Indians, yet no mention is made in this report of its having any opening in the rear. That difficulty is met by the defendant, by the production of a paper which he says is a survey and plat of his claim made by F. V. Potier, a United States Surveyor, which it is certified was offered as part of the evidence in support of the claim, when last presented for the action of the United States Commissioners, and it is alleged, that as the claim was confirmed, it must necessarily be so to the extent mentioned in the plat, it being a portion of the evidence. Admitting for a moment, that this plat is valid, we are not prepared to say that the proposition is true to the extent stated. One piece of evidence does not fix the extent and character of a decision, but we must look to all that is offered and the amount demanded. There is nothing in what is said by the Register and Receiver, which authorizes a belief that any opening was claimed or any was intended to be confirmed. McDonough & Co. simply say they claim a "front of thirty-two arpents, with a depth extending as far as Lake Maurepas," under a complete title to Duparc, and the Commissioners say it is a claim that stands confirmed by law.

The omission to mention any thing about the plat, goes to show it was not regarded or had but little weight, and we can scarcely suppose that so important an opening as is claimed, would have been passed over in silence if it had been seriously pressed.

EASTERN DIS.
*April*, 1841.

MILLAUDON
ET AL.
*vs.*
M'DONOUGH.

EASTERN DIS.
*April*, 1841.

MILLAUDON
ET AL.
*vs.*
M'DONOUGH.

We are of opinion, that the plat even if admissible as evidence, is not entitled to any weight as establishing the extent of the claim. Although Potier says he is a sworn Surveyor, commissioned by the Surveyor General of the United States, we know of no right that gives him to run out claims under the direction of individuals merely, and fix the boundaries of those not recognized by the government. It is not pretended he acted under any authority from his superior in making what is called a survey; it never was presented to the Surveyor General for his approval, nor does it seem to have had the legal sanction of any one authorized to act in the premises. Potier does not pretend it is a regular survey, he calls it "Plan extrait des minutes de nos opérations d'arpentage faites dans les années 1806, 1808 et 1812, lesquelles lignes en divers temps ont été parcourues jusqu'à la rivière Amite et demarquées conformément aux lignes du plan." He then goes on to say Delille Duparc had derived his title from the Collapissa Indians and sold it to various persons. He does not seem even to have heard of a grant from the French government in 1769, or attempted a location in conformity to it.

The defendant further states, that his claim has been located by the United States since its confirmation, and surveyed in the manner claimed by him. To establish this, he offered in evidence copies of three township plats, to wit: Township No. 10, South; ranges five and six East, and township No. 11 South; range five East. To the introduction of these plats as evidence, Rightor objected; because the papers are not nor do they purport to be copies of the original plats of those townships, and for other causes mentioned in his bill of exceptions. The District Judge admitted them in evidence, in which we think he erred. The papers are copies of copies, and it is a well settled rule of evidence that they are not admissible as testimony when better evidence can be procured. It is further apparent from the certificate of the Register of the Land Office, that they are not correct copies. The claim of McDonough is represented on these copies in a manner differing

Copies of copies of township maps are not admissible in evidence when better evidence can be procured.

from that in which it appears on the plats in the Register's office. The Register states on one of the plats, that on the original "Section No. 1 is not colored," but that he had "represented it as it now appears, at the request of John McDonough, Esq." The coloring of these maps was perhaps not intended to deceive or impose on any person, but when it is recollected that surveyors represent private claims properly located on their plats, in a coloring different from public lands or doubtful rights, such a representation is calculated to make an erroneous impression. But the objection most fatal to the reception of these plats as evidence, is that they are certified by a person not the keeper of the original. The Surveyor General of the United States for this State is the officer who has charge of the public surveys, and he is the proper person to certify the township maps. 2 vol. Land Laws, 294—sec. 6. The copies of public surveys deposited in the office of the Register of the Land Office are placed there for his government and to enable him to perform the duties imposed by law, but he has not legal authority to certify copies so as to make them legal evidence. The law entrusts that power to another person.

Although we are of opinion these plats were improperly received in evidence, we have examined them with a view to see if the pretended survey would justify the claim of the defendant. We do not find in the record the slightest evidence of authority from any officer of the United States to locate this claim in any manner. The acts of Congress of the 12th of April, 1814, and the 3d March, 1831, direct the mode of locating private claims. Land Laws, vol. 1, 652—sec. 3—4. Idem, vol. 2, 294—sec. 6.

There are also other acts of Congress in relation to the location of particular classes of claims, but the defendant does not come within the provisions of any of them.

It has been decided that the court and jury will look beyond the confirmation of a claim by the land commissioners or Congress emanating from the former governments of Louisiana in

The court will look beyond the confirmation of a claim by the land commissioners or congress, emanating from the former governments of Louisiana, in order to ascertain the extent and boundaries of the land claimed.

When the expressions in a grant or title only convey a certain front and depth, the grantee or purchaser cannot claim by diverging lines to the rear and thereby obtain more than the superficies contained in a parallelogram.

order to ascertain the extent and boundaries of the land claimed.—11 La. Rep. 587.—We have acted on that principle in this case, and see no reason to depart from our previous decisions, that when the expressions in a title only convey a certain front and depth, the grantee or purchaser cannot claim by diverging lines to the rear, and thereby obtain more than the superficies contained in a parallelogram, unless there be something in the grant to authorize the opening, or from the peculiar position of the claim, it shall be necessary to give the superficial quantity. That does not appear necessary in the case before us.

We repeat, that it is not our purpose to decide in any manner upon the validity of the Houmas grant under which the plaintiffs claim, nor do we decide any thing more in relation to that alleged to be in favor of Delille Duparc, under which the defendant claims, than to say, whether it is for thirty or forty arpents front, and is eighty arpents or more in depth, it must be located by parallel lines, unless the confirmation to McDonough and Brown for eighteen arpents three toises and three feet front by eighty in depth, should for that quantity authorize the opening mentioned in the report on the claim, but it cannot extend beyond it.

It is clear from the evidence before us, that the claim of the defendant if located in the manner specified, cannot in any way interfere with the land claimed by the plaintiffs as shown by the plats laid before us.

The judgment of the District Court is therefore affirmed with costs.