WHITNEY *v.* CITY OF NEW ORLEANS.

(*Circuit Court, E. D. Louisiana.* June 16, 1890.)

1. MESNE PROFITS—LIABILITY OF DISSEISOR—PARTIES—EQUITY.
   A suit was brought by the owner of land against the parties in possession for mesne profits. The defendants notified their grantor, who had warranted the title, and he conducted their defense. After recovering judgment, the plaintiff sued said grantor to recover the amount of such judgment. The defendants in the original suit were not made parties, and no objection was raised on that ground. *Held,* that the fact that some of said defendants had died after entry of judgment against them did not affect the suit against the grantor.

2. SAME—ASSIGNMENT BY TENANT.
   Plaintiff had had transferred to her the right to sue said grantor for the price paid him for the land. *Held,* that this fact did not affect her right to recover for mesne profits.

3. SAME—PRINCIPAL AND SURETY—RELEASE.
   Where an owner of land, who has recovered two judgments against a person in possession,—one for the land, and the other for rents and profits,—exchanges her judgment claim for rents and profits against an evicted tenant for the right of the tenant to recover over from his grantor the same amount on the latter's covenant of warranty, and relinquishes all claim against the evicted person personally, such agreement is no defense to a suit against such grantor for said rents and profits, since he is the principal debtor, and the evicted person is only the surety; but equity will deduct from the amount to be recovered against the principal the amount paid by the surety as part consideration for such transfer and personal release.

In Equity.

Suit by W. W. Whitney, as administrator of the succession of Myra Clark Gaines, against the city of New Orleans. For a full statement of the facts in the case, see 9 Sup. Ct. Rep. 745.

*T. J. Semmes* and *A. Goldthwaite,* for complainant.

*J. R. Beckwith,* for defendant.

BILLINGS, J. This cause is submitted upon exceptions to the master's report. Very many of the exceptions present the question as to the scope of inquiry included in the order of reference. This matter was dealt with by the court in the order referring the matter to the master. That order involved a defining of the question committed to this court by the mandate, as stated in the accompanying opinion of the supreme court. See 9 Sup. Ct. Rep. 745. The supreme court submitted the cause. to this court, as involving a sum in subtraction. It fixed the minuend at $576,707.92, with interest from January 10, 1881, and the subtrahend as the aggregate of the judgments against the tenants or defendants in the *Agnelly* and *Monsseaux Cases* for rents and profits, which the decedent, Mrs. Gaines, should be found to have compromised or settled for less sums than their face.

1. It is objected that one of the defendants in the *Agnelly Case* was dead when the judgment for rents and profits was rendered. The record shows this to be the fact. His heirs voluntarily appeared, and the judgment was based upon the statements rendered by the heirs. There was no formal decree of revivor. But all this appeared of record. From the opinion, it is clear that the *Agnelly* and *Monsseaux Cases* were not to be tried over again, and this and similar ojections were not to be considered, but solely how much reduction the minuend, the Agnelly and Monsseaux judgments, should suffer by reason of judgments compromised or settled for less than their face.

2. It is also objected that the Agnelly and Monsseaux judgments do not aggregate the said sum of $576,707.92, as is stated by the supreme court. This is a mistake. Besides the judgments set forth in Schedules B and C, there were some $60,000 of judgments rendered in the *Agnelly* and *Monsseaux Cases* after the bill in this case was filed. In fact it is stated by the master the judgments shown by the record to have been rendered in the *Agnelly* and *Monsseaux Cases* aggregate several thousands of dollars more than the amount as arrived at by the supreme court.

3. It is also objected that some 20 of the judgment defendants in the *Agnelly* and *Monsseaux Cases* had died after the entry of judgment against them, and before the reference to the master in this cause. This is immaterial. The supreme court were clearly of the opinion that, as an original question, the defendants in the *Agnelly* and *Monsseaux Cases* were necessary parties to this case. But since this objection had not been taken by the defendant in this case, and since the defendant herein was the party ultimately liable in the *Agnelly* and *Monsseaux Cases*, had been notified as warrantor, as warrantor had appeared and herself conducted the defense, and in her own right taken an appeal in those cases, the court thought the whole of her opportunity to protect herself had been as ample as it would or could have been if she had been made a party defendant by the complainant, with the single exception, viz., the opportunity to ascertain and establish what defendants, if any, had settled or compromised after the rendition of the judgment. The supreme court accordingly held that the numerous defendants in the two former cases (the *Agnelly* and *Monsseaux*) were not necessary parties; their death could have

no effect, especially as the opportunity was reserved to the defendant in case of death. as much as in the case of life. They were not parties, and their death deprived the defendants of no equities, and did not affect the result or judgment in this cause.

4. It is objected that the decedent, Mrs. Gaines, had had transferred to her the right to sue the defendants for the price of some of the property recovered in the *Agnelly* and *Monsseaux Cases* by the defendants in those cases, and had sued on those rights, and, in some cases, had recovered from the defendants the amounts thereof. This does not affect the inquiry or the result in this case. When the owner evicts a tenant in an action of ejectment the tenant may, upon eviction, recover over from his warrantor (1) the price which he paid, and (2) the rents and profits recovered against him. But the price is one thing and the rents another. The judgments for price and for rents are different things. The transfer of the right to sue for and recover the price, or its recovery, would leave the matter of the rents unaffected.

There remains the question whether, and, if yes, to what extent, Mrs. Gaines compromised or settled any judgments for rents in the *Agnelly* and *Monsseaux Cases* for less than the face of those judgments. This question is presented in written agreements which are, in all the cases, in words as well as substance, the same. The agreements recite that Mrs. Gaines has recovered two judgments against the tenant,—one for land, the other for rents. (1) It exchanges the land for a transfer of the right of the evicted tenant to recover the price from the tenant's warrantor and all preceding warrantors, including the defendant. (2) It relinquishes all claims against the tenant personally upon divers considerations, among which is the transfer of the right to recover the rent from the defendant. If the actual tenant was the principal debtor, and the defendant was the surety, then such an agreement would be a complete discharge of the whole debt for rents. If the actual tenant was the surety, and the defendant was the principal debtor, then such an agreement would leave the debt of the defendant, as principal debtor, unimpaired. The supreme court, in their opinion in this cause, *New Orleans* v. *Gaines' Adm'r*, 131 U. S. 212, 9 Sup. Ct. Rep. 745, say:

"As between the city and its grantee, the former, by reason of its guaranty of title, is really the principal debtor, and bound to protect the grantee as a principal is bound to protect his surety."

This proposition is exactly in accordance with the decisions of our own supreme court. *Millaudon* v. *McDonough*, 18 La. 108. I think, therefore, that it was neither the intention of the parties, nor the legal effect of what had been done, that the principal debtor should be discharged. It was an agreement on the part of the creditor to look to a principal debtor, instead of a surety against whom judgment had already been obtained. Upon the transfer of the right to look to a principal, the surety was personally discharged. The law placed the primary obligation upon the warrantor. The agreement left him the sole debtor. In no respect did it injure the original situation of the warrantor, or affect his obligation. The test as to whether there was a settlement or

compromise of the judgments would seem to be whether there was any-thing done which could prevent a subrogation. I understand this as being the test which the supreme court intended. A judgment had been obtained against a surety. The creditor, having in equity a resulting subrogation, takes an express one, and agrees to release the surety per-sonally from the payment of the judgment, but that it shall survive as a basis of claim against the principal. I think the transaction is most nearly assimilated to an agreement between the surety and the creditor, whereby it is agreed that the right springing out of the judgment to look to the principal shall survive, and be transferred to the creditor, and that the creditor simply covenants not to enforce his claim against the surety. Such an agreement would be permissible in law and equity, and would leave the subrogation raised up by equity, as well as the ex-press subrogation, to an unimpaired right to compel payment from the principal. It is urged by the solicitor for the defendant that a judg-ment is extinguished, and is still made a basis of a claim against an-other party. This is not an altogether exact statement of the case. So far as it is a personal judgment against the tenant, he is released from it. So far as it is the basis of a claim against another, who is a princi-pal in the transaction out of which it arose, it is agreed that it shall continue in force. It is as if Mrs. Gaines had covenanted not to en-force the judgment personally against the tenant, and, in consideration therefor, had received a transfer of the judgment. It could make no difference to the defendant whether the tenant paid the judgment in money to the creditor and brought his action over against the defendant for the amount of the judgment, or whether the tenant paid the judg-ment by transferring to the creditor all his rights under it, and the cred-itor brought the action over against the defendant. In either case the city would but once satisfy her obligation to the warrantee or his subrogee. If these written and printed agreements represent the real transaction between Mrs. Gaines and the tenants in the *Agnelly* and *Mons-seaux Cases*, and the master finds, and the evidence shows, they do, then they have not the characteristics of compromises or settlements, but rather present a contract whereby a creditor released a surety, and agreed to look to a principal.

It also appears from the report of the master and from the evi-dence adduced before him that the amount received by Mrs. Gaines, as the consideration for releasing the tenants in the *Agnelly* and *Mons-seaux Cases* from personal liability, amounts in the aggregate to the sum of $16,501; and that in two cases,—that of J. B. Slawson, $900 was "for costs, attorney's fees, marshal's and other officers';" that in the case of A. Rochereau, she received $206.50 for court costs. The receipt of the costs did not prevent or qualify the subroga-tion. As to the balance of the $16,501, namely, the sum of $15,394.50, nothing appears from the agreements or from the other testimony show-ing for what it was paid or received. As to this last amount, the case stands, therefore, that it was an amount paid by the surety as a consid-eration of the substitution of the principal in his place as the debtor,

and of the agreement on the part of the creditor to look exclusively to the principal debtor for payment. Interpreting as I do the opinion of the supreme court as meaning to regard the Angelly and Monsseaux judgments as conclusive upon the defendant down to the time of their rendition, and as limiting the inquiry in this court to what had subsequently been done by the creditor and the surety, which compromised or settled them, I nevertheless think that the scope of the inquiry includes any transaction which would qualify the right to subrogation, and that the amount received by the complainant, exclusive of that received for costs, should be deducted from the account of the judgments, since equity would not subrogate for the portion paid. In all other respects the exceptions to the master's report are overruled, and a decree will be entered for the sum of $576,707.92, less the sum of $15,394.50, viz., the sum of $561,313.42, with interest from January 10, 1881, and the costs since the filing of the mandate in this court.